O, JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY-NATIONAL INSURANCE COMPANY; and ABUNDANT PROMISE LAND d/b/a YOGURTLAND,<br><br>Plaintiffs,<br><br>v.<br><br>BYPASS MOBILE LLC; and DOES 1 TO 15, Inclusive,<br><br>Defendants. | Case No.: 2:24-cv-01073-MEMF-JC<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS OR TRANSFER [ECF NO. 7]** |

Before the Court is a Motion to Dismiss, or, in the alternative, to Transfer the Action filed by Defendant Bypass Mobile LLC. ECF No. 7. The Court deems this matter appropriate for resolution without oral argument. *See* C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court GRANTS IN PART the Motion and ORDERS that the action shall be TRANSFERRED to the Northern District of Georgia.

/ / /

/ / /

/ / /

I.  **Background**

  A. **Factual Allegations**[1]

Plaintiff Century-National Insurance Company ("Century-National") is a corporation incorporated in California and with its principal place of business in North Carolina. *See* Compl. ¶¶ 1, 6; *see also* ECF No. 1-3. Plaintiff Abundant Promises Land Inc. d/b/a Yogurtland ("Abundant," or collectively with Century-National, "Plaintiffs") is a corporation incorporated in California and with its principal place of business in California. *See* Compl. ¶¶ 1, 7; *see also* ECF No. 1-4. Defendant Bypass Mobile LLC ("Bypass") is a limited liability company. *See* Compl. ¶ 8.[2]

Bypass sells a subscription-based payment system to fast casual restaurants. *See id.* ¶ 8. Bypass offers physical point of sale equipment—devices to process credit card payments—and operates software that runs on this equipment. *See id.* ¶ 10. When operating as intended, Bypass's system will "batch" sales and process them daily. *See id.* ¶ 8.

Abundant is in the fast-casual restaurant business. *See id.* ¶ 7. In 2017, a franchisor for Abundant entered into a contract (the Master Services Agreement, or "MSA"[3]) with Bypass to use Bypass's payment system in multiple Abundant stores. *See id.* ¶ 9.

The MSA contained the following clause:

---

[1] Except where otherwise indicated, the following factual allegations are derived from Plaintiffs Century-National Insurance Company and Abundant Promise Land Inc. d/b/a Yogurtland's Complaint. *See* ECF No. 1-1 ("Complaint" or "Compl."). For the purposes of analyzing the Motion to Dismiss pursuant to Rule 12(b)(6), the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

[2] Plaintiffs alleged in their Complaint that Bypass is a corporation with its principal place of business in Texas. *See* Compl. ¶ 8. Bypass asserts, and Plaintiffs do not dispute, that Bypass merged with First Data Merchant Services, LLC ("First Data") in 2020 and that Bypass is now part of First Data. *See* ECF No. 1 ¶ 5(b). Bypass further asserts that First Data is a limited liability company whose sole member is First Data Corporation, and that First Data Corporation is a Delaware corporation with its principal place of business in Georgia. *See id.* Therefore, Bypass asserts that it is a citizen of Delaware and Georgia despite the fact the Plaintiffs' Complaint suggests Bypass is a citizen of Texas. *See id.* In any case, there appears to be no dispute that the parties are citizens of different states and no evidence that the Court does not have subject matter jurisdiction on the basis of diversity of citizenship.

Despite the merger described above, the Court will use the name "Bypass" for simplicity, as this was the operative name during the alleged events that led to this lawsuit.

[3] Plaintiffs attached the MSA to their Complaint. *See* Compl. at 9–44.

> Jurisdiction; Venue; Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of Texas, without regard to its conflicts of law rules. The Parties agree that exclusive venue for any dispute arising out of or relating to this Agreement shall be in the venue of the defending Party's principal place of business. In the event of such suit, counterclaims shall remain in the original suit to the extent permitted by applicable procedural law.

*See* Compl. at p. 25 (Section 12.09 of MSA).

In 2021, Abundant became aware of accounting discrepancies, and then discovered that Bypass's system had not been working properly. *See id.* ¶¶ 11, 12. Bypass's system had, at times, failed to batch and process payments as it was supposed to. *See id.* ¶ 12. Because too much time had passed, Abundant was not able to submit these payments to credit card companies and thus Abundant lost significant revenue. *See id.* Bypass provided new equipment to Abundant at affected locations which resolved the problem, but Abundant was not able to recover its lost revenue. *See id.* Abundant lost $133,124.11 in revenue because of the issues with Bypass's system. *See id.* ¶ 14.

Century-National was Abundant's insurer. *See id.* ¶¶ 15, 16. Abundant requested reimbursement from Bypass, which Bypass refused to provide, and so Abundant made a claim to Century-National. *See id.* ¶¶ 13–16. Century-National paid Abundant $30,000 to partially cover Abundant's losses pursuant to Abundant's insurance policy. *See id.* ¶ 16.

**B. Procedural History**

Plaintiffs filed suit in Los Angeles County Superior Court on January 3, 2024. *See* Compl. Bypass removed to this Court on February 8, 2024. *See* ECF No. 1. Plaintiffs assert three causes of action: (1) subrogation, (2) economic loss, and (3) indebtedness. *See* Compl.

Bypass filed the instant Motion to Dismiss or Transfer on February 15, 2024. *See* ECF No. 7 ("Motion" or "Mot."). Plaintiffs filed an Opposition to the Motion on June 7, 2024. *See* ECF No. 17 ("Opposition" or "Opp'n"). Bypass filed a Reply in support of the Motion on June 14, 2024. *See* ECF No. 18.

**II. Applicable Law**

**A. Motion to Transfer Pursuant to 28 U.S.C. § 1404**

Forum-selection clauses are provisions of contracts providing that certain disputes can only be brought in some specific court or courts. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 24

(1988). Forum-selection clauses should generally be enforced, as the parties presumably bargained for these clauses, and enforcement "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citing *Stewart*, 487 U.S. at 24 (Kennedy, J., concurring)). Thus, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal citations and alterations omitted).

A "district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a) ("Section 1404(a)"). In a typical case, a court considering a motion to transfer pursuant to Section 1404(a) has discretion as whether the motion should be granted, and the court should consider several factors related to convenience and the public interest in exercising that discretion. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, Section 1404(a) also "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co.*, 571 U.S. at 59. "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." *Id.* at 581. A court analyzing a motion to transfer based on a valid forum-selection clause should "consider arguments about public-interest factors only"—these factors "will rarely defeat a transfer motion," and so "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.

**B. Motion to Dismiss Pursuant to Federal Rule of Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III.  Discussion

The Court finds that the forum-selection clause in the MSA mandates transfer of this action to the Northern District of Georgia. Thus, the Motion will be GRANTED IN PART to the extent that it requests such relief. The Court need not reach Bypass's other arguments.[4]

---

[4] Bypass requested that "If Any Claim Against Bypass Survives, the Court Should Transfer This Case to the Northern District of Georgia." *See* ECF No. 7-1 at 8. Thus, it appears to the Court that Bypass's preference would be that the Court begin by analyzing whether Plaintiffs have stated a claim, and not reach the transfer question if Plaintiffs have failed to do so. The Court will take the opposite approach—beginning by analyzing transfer and ultimately not reaching the question of whether Plaintiffs have stated a claim. The Court finds this more appropriate.

If the Court were to analyze whether Plaintiffs stated a claim and find (as Bypass requests) that Plaintiffs have not done so, the Court would need analyze whether to grant Plaintiffs leave to amend their claims. Leave to amend is granted in most cases unless it is clear that the complaint cannot be saved by any amendment. *See Manzarek*, 519 F.3d at 1031. If the Court were to grant leave to amend, the Court would generally set a deadline for when an amended complaint could be filed. The Court finds that analyzing these issues would not be appropriate in light of the forum-selection clause.

Because of the clear guidance from the United States Supreme Court that forum-selection clauses should be enforced, the Court is not inclined to grant leave to amend and allow Plaintiffs to reassert a complaint in this Court. Instead, it appears to the Court that if Plaintiffs are to file an amended complaint, they should do so in the Northern District of Georgia. Nor is the Court inclined to grant leave to amend, simultaneously transfer the case, and set a deadline for an amended complaint that would be filed in the Northern District of Georgia—it appears to the Court that a court in the Northern District of Georgia should consider whether to grant leave to amend and should set its own deadline for an amended complaint.

Thus, the Court finds it appropriate to only reach the transfer issue, and to allow a court in the Northern District of Georgia to consider whether Plaintiffs have stated a claim, whether to allow leave to amend, and

**A. There is a valid forum-selection clause between Abundance and Bypass.**

Courts must adjust their analysis of a motion to transfer where there is a "*valid* forum-selection clause." *See Atl. Marine Const. Co.*, 571 U.S. at 581 (emphasis added). Thus, the Court must first consider whether there is a valid forum-selection clause.

Here, there is no dispute that the MSA contained the following term: "The Parties agree that exclusive venue for any dispute arising out of or relating to this Agreement shall be in the venue of the defending Party's principal place of business." *See* Compl. at p. 25 (Section 12.09 of MSA). Plaintiffs do not attempt to argue that the relevant contract did not contain this term or that the contract was invalid. Thus, although Plaintiffs assert that the clause in question does not mandate transfer and should not be enforced, there does not appear to be any dispute that the clause is part of the contract and is valid. Thus, the Court finds that there is a valid forum-selection clause, and the Court will analyze the transfer issue accordingly. *See Atl. Marine Const. Co.*, 571 U.S. at 581 (describing how a valid forum-selection clause changes the analysis).

**B. The forum-selection clause applies to this action and mandates transfer to the Northern District of Georgia.**

The Court finds that the forum-selection clause described above applies to this suit and mandates that this suit be litigated in the Northern District of Georgia.

First, the forum-selection clause applies here. The parties agreed that "any dispute arising out of or relating to [the MSA]" would need to be litigated in the specified forum. *See* Compl. at p. 25. Here, the claims relate to Bypass's performance (or errors in performance) of its duties under the MSA. Plaintiffs have not attempted to argue that the dispute at issue is outside of the scope of the clause. The Court finds that this dispute arises out of or relates to the MSA.

Second, the forum-selection clause mandates that disputes be litigated in the Northern District of Georgia. The clause states that the "exclusive venue" for covered disputes is "the venue

---

what the deadline for an amended complaint should be. Other district courts within the Ninth Circuit have taken a similar approach. *See, e.g.*, *KMS, LLC v. Major League Trucking, Inc.*, 2023 WL 5333784, *2–*4 (C.D. Cal. July 25, 2023) (granting motion to transfer without reaching issue of whether claims should be dismissed); *8 Lane Inv., Inc v. GenTech Sci., Inc.*, 2022 WL 20182971, *1–*4 (C.D. Cal. Mar. 16, 2022) (similar).

of the defending Party's principal place of business." *See* Compl. at p. 25. Here, the defending party is Bypass, and Bypass asserts that its principal place of business is in the Northern District of Georgia. *See* ECF No. 1 ¶ 5(b). Plaintiffs do not dispute that Bypass is the defending party or that Bypass's principal place of business is in the Northern District of Georgia. Thus, the forum-selection clause mandates that this dispute be litigated in the Northern District of Georgia.

Plaintiffs raise several arguments otherwise, all of which fail. Plaintiffs assert that the forum-selection clause at issue is "not mandatory" because it does not "clearly designat[e] a forum as the exclusive one." *See* Opp'n at 7. Plaintiffs cite *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039 (9th Cir. 2015), which held that "[t]o be mandatory, a[n] [arbitration] clause must contain language that clearly designates a forum as the exclusive one." *Coeur d'Alene Tribe*, 794 F.3d at 1045. The clause in question in *Coeur d'Alene Tribe* stated that "either party *may* pursue binding arbitration to enforce or resolve disputes," but did not state that arbitration was the only possible remedy. *See id.* Plaintiffs also cite *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501 (5th Cir. 2004), which held that "[f]or a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive, and *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia,* 581 F.3d 210 (5th Cir. 2009), which cited the language above from *City of New Orleans. See City of New Orleans*, 376 F.3d at 504; *UNC Lear Services*, 581 F.3d at 219.[5] Plaintiffs' argument that the clause in question here is not mandatory fails—the clause in question clearly states that the designated venue is "exclusive venue" for litigating disputes. *See* Compl. at p. 25. In other words, it does not just establish that the designated venue shall have jurisdiction, it explicitly makes that jurisdiction exclusive. *See City of New Orleans*, 376 F.3d at 504. This is a mandatory clause as described in *Coeur d'Alene Tribe* and *City of New Orleans. See id.*; *see also Coeur d'Alene Tribe*, 794 F.3d at 1045. Plaintiffs also note that the clause does not actually identify the Northern District of Georgia,

---

[5] The Court notes that the parties cite case law from both the Fifth Circuit and Ninth Circuit, and that neither party appears to have briefed the issue of what circuit's law should apply to the question of whether the case should be transferred, in light of the MSA's language that MSA should "construed and enforced in accordance with the laws of the State of Texas." *See* Compl. at 25. The Court need not settle the issue of which law applies, as there is no indication that there would be a different result based on this question.

and instead identifies only the "defending Party's principal place of business."[6] See Compl. at p. 25. Plaintiffs argue that this is improper, and that the parties did not bargain for litigation to occur in Georgia. But Plaintiffs cite no authority suggesting that it is improper to describe the mandatory forum in the way that the forum-selection clause did here.[7] The parties appear to have bargained that whatever party is defending the suit should have the right to litigate in its home forum. Common sense suggests that the parties' principal place of business might change, and nothing in the MSA states that such changes are prohibited or that the forum-selection clause should not be interpreted in light of such changes. Allowing the defending party to litigate in its home forum is not an inherently unreasonable choice to make it, and it is not this Court's role to undo that choice. Because no authority suggests this is not permitted, the Court will not invalidate the clause on the basis that it did not specifically identify a forum and instead made the mandatory forum the defending Party's principal place of business.

Thus, the Court finds that the forum-selection clause applies and mandates transfer.

### C. Plaintiffs have not shown any reason the forum-selection clause should not be enforced.

An otherwise valid forum-selection clause that would apply to a matter should not be enforced in any of the following three circumstances:

---

[6] To the extent that Plaintiffs are arguing that this lack of specificity makes the clause not mandatory (as mandatory is used in *Coeur d'Alene Tribe* and *City of New Orleans*), this argument fails. As described above, both *Coeur d'Alene Tribe* and *City of New Orleans* found clauses not mandatory because the language suggested that the parties *may* pursue claims in a forum (or through arbitration in *Coeur d'Alene Tribe*), but did not state that the forum in question was the *only place* in which the parties could pursue those claims. Here, the language is clearly mandatory when analyzed through this lens, as it makes one forum the exclusive venue. *See* Compl. at 25. Whether the clause is mandatory is a separate issue from whether it is appropriate to designate the chosen forum as the "defending Party's principal place of business" without further specificity; nothing in *Coeur d'Alene Tribe* or *City of New Orleans* suggests a description of the forum in this manner coupled with mandatory language would result in a non-mandatory clause.

[7] Plaintiffs cite more cases that describe the same rule above—that permissive language will make a clause non-mandatory. *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762 (9th Cir. 1989) (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956 (5th Cir. 1974)) ("the parties submit to the jurisdiction of the courts of New York" is not mandatory as it does not state that New York is the only permitted jurisdiction). Again, this rule is separate from the issue of whether it is proper to designate a forum as the MSA did and does not prohibit making a forum mandatory without specifically naming the forum.

8

> (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.

*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018), holding modified by *Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023); *see also Atl. Marine Const. Co.*, 571 U.S. at 582 (a court considering a motion to transfer where there is a forum-selection clause should "consider arguments about public-interest factors only," and these factors "will rarely defeat a transfer motion").

Here, none of these factors counsel against transfer. First, Plaintiffs have not argued that the forum-selection clause was a result of fraud or overreaching, so the first factor is not relevant. Second, Plaintiffs have not argued that any strong public policy of California would be contravened by transfer. The Court notes that the parties appear to agree that this suit should be decided based on Texas law (*see* ECF No. 7-1 at 4 n.3; Opp'n at 6), and not California law, which further indicates that transfer is unlikely to impact any public policy of California. And third, Plaintiffs have not argued that trial in Georgia would be so gravely difficult or inconvenient that it would effectively deny them a day in court. Instead, Plaintiffs focus their argument on the notion that Georgia has little interest in this lawsuit while California has at least some interest because Abundant's restaurants are in California. *See* Opp'n at 9. While this may be true, no authority suggests it is reason to deny the motion.

Thus, Plaintiffs have not shown that this is one of the "most exceptional cases" where a forum-selection clause should not be enforced. *See Atl. Marine Const. Co.*, 571 U.S. at 582.

### D. The forum-selection clause applies to Century-National.

Bypass notes that Century-National was not a party to the MSA, but nevertheless argues that the forum-selection clause applies to Century-National's claims. Bypass argues that Century-National brings claims standing in the shoes of Abundant and seeks recovery for Abundant's losses related to the MSA, and cites non-binding cases to argue the forum-selection clause should apply. *See Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 937 (N.D. Cal. 2020). Plaintiffs do not

dispute this point. The Court holds that Century-National's claims[8] as pleaded are sufficiently related to the MSA that the forum-selection clause in the MSA applies, and that the action as a whole should be transferred.

### IV. Conclusion

For the reasons stated herein, the Court ORDERS as follows:

1. The Motion (ECF No. 7) is GRANTED IN PART.

   a. The action shall be TRANSFERRED to the Northern District of Georgia.

   b. The Motion (ECF No. 7) is otherwise DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 30, 2024

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[8] The Complaint does not distinguish Century-National's claims from Abundant's and suggests both Plaintiffs bring all three. *See* Compl. But Century-National's only alleged loss appears tied to its subrogation claim where it seeks reimbursement for the money it paid to Abundant. *See* Compl. This claim is directly tied to Abundant's relationship with Bypass per the MSA, and so the Court holds that the forum-selection clause applies to Century-National here.